IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: Appeal of Gressen Properties, LLC | : | |
| | : | |
| | : | |
| From Decision of City of Philadelphia Commission on Human Relations | : | |
| | : | |
| | : | No. 349 C.D. 2023 |
| Appeal of: Christopher Leidig | : | Submitted: April 11, 2024 |


BEFORE:    HONORABLE ANNE E. COVEY, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                     FILED:  May 9, 2024


Christopher Leidig (Appellant) appeals from the Philadelphia County Common Pleas Court's (trial court) March 17, 2023 order reversing the City of Philadelphia Commission on Human Relations' (PCHR) decision that determined that although Appellant did not establish a discrimination claim, Appellant did establish a claim for two counts of retaliation.  Essentially, the issue before this Court is whether the trial court erred by reversing the contested portion of the PCHR's decision.[1]  After review, this Court affirms.

---

[1] Appellant presented five issues in his "Questions Involved:" (1) whether the trial court erred by substituting its own judgment for the PCHR's judgment on the weight, credibility and relevance of the evidence; (2) whether the trial court erred by ruling that Appellant failed to name the correct respondent; (3) whether the trial court erred by ruling that it was logically incongruous that a complainant failed to prevail on an underlying discrimination claim, but still prevailed on a retaliation claim; (4) whether the trial court erred by ruling that the relief granted by the PCHR was not justified; and (5) whether the trial court erred by using the wrong standards when it reviewed the case.  Appellant Br. at 5.  All of the issues are subsumed in the issue as stated by this Court and will be addressed accordingly.

On or about February 1, 2017, Appellant and his mother, Patricia Leidig (Mother), signed a lease with Scott Gressen (Gressen)[2] to reside at a portion of Gressen's property designated as first floor apartment, 448 Seville Street, Philadelphia (Apartment), as tenants (Lease). *See* Original Record (O.R.) at 275-278.[3] On June 1, 2019, Gressen Properties, LLC (Gressen Properties) sent a notice to all tenants that pursuant to Clause 13 of the Lease,[4] it amended the building rules and added no vaping to the no smoking policy (June 1, 2019 Notice).[5] *See* O.R. at 301. On June 6, 2019, Appellant sent a picture of his medical marijuana card to Gressen Properties' employee, Johnny,[6] and stated: "Here is a picture of my legal verification for marijuana I vaporize[.] [I]t is against the law to tell me I cannot take my prescription[.] I will sue you if you try to kick us out for it[.] I do not smoke mariju[ana] . . . ."[7] O.R. at 299. To which, Johnny responded: "You never stated this on your application[,] and you are violating our [n]o [s]moking policy for the

---

[2] Gressen owns the property Appellant and Mother leased.

[3] Because the pages in the original record are not numbered, the page numbers referenced herein reflect electronic pagination.

[4] Clause 13 of the Lease provided:

> **Building Rules**. Tenant will comply with the rules of the [b]uilding adopted and altered by [l]andlord from time to time and will cause all of its agents, employees, invitees[,] and visitors to do so; all changes to such rules will be sent by [l]andlord to [t]enant in writing. The initial rules for the [b]uilding are attached hereto . . . and incorporated herein for all purposes.

O.R. at 276.

[5] The original no smoking policy prohibited smoking inside the apartments. The June 1, 2019 Notice provided: "Any violation of this rule will be cause for eviction." O.R. at 301.

[6] Johnny's last name is not included in the original record.

[7] The rest of the text is cut off.

2

building. Vape or not. That's the issue at hand. You were asked not to do it in the building." O.R. at 300.

On June 14, 2019, Appellant sent a list of complaints regarding the condition of his Apartment to Gressen Properties. On June 17, 2019, Gressen Properties' manager Carrie Anne Sanford (Sanford) responded:

> Thank you for bringing these items to our attention. Per our conversation earlier, Johnny will be by on Wednesday, June 19th around 1[:00] p[.]m[.] to evaluate the items on the list.
>
> The timing of which you chose to report these items is a little ironic since you have recently told us you will not be renewing your [L]ease after we reached out to you about violating the no smoking policy.
>
> After discussing your complaint with [Gressen], he has decided that we would [sic] let you out of your [L]ease early without penalty if you wish to do so. We want all of our tenants to be happy and [] satisfied. Please let me know what you decide[].

O.R. at 308.

On June 18, 2019, Appellant emailed the following to Sanford at 12:39 p.m.:

> I sent a picture to Johnny of my prescription and let him know that I vaporize it and do not smoke there is no smoking clause on my [L]ease that I saw it my water [sic] looked over it and prove [sic] that I was right[.] I decided not to renew my [L]ease because he told me[,] but it does not matter and I should have let him know my medications prior to that which is highly illegal according to my [L]ease if I want to renew it I will let my landlord who is [Gressen] no [sic] not Johnny who is not the landlord[.] I am not talking to Johnny anymore because he has violated my rights time and time again [sic] I'm in the right here

3

and I've already set up legal aid and they also agreed that I'm not violating my [L]ease so I would appreciate it if you looked at my rights before you guys decided to violate them[.]

O.R. at 297. At 12:39 p.m., that same date, Appellant again emailed Sanford stating:

Find [sic] me that according to the Fair Housing Act[8] my prescriptions are my business and the fact that I gave you a copy of it after the fact and you guys are still coming at me[,] I might just have to go to my lawyer again because this is blatant discrimination on my disabilities[.]

*Id*. Finally, at 12:53 p.m., that same date, Appellant emailed Sanford:

Here is once again another of my legal prescription [sic] from the Department of Health Pennsylvania and I am supposed to vaporize it indoors that [sic] the legal way to use it and that is the legal way that I do use it[.] I do not smoke it[,] it does not violate the smoking [c]lause that does not even exist and I would like the email sent to me have a copy of our signatures on the addendum on the [L]ease that says the non-smoking [c]lause that we do not have[.]

*Id*.

On June 21, 2019, as a result of complaints from neighboring tenants that marijuana smoke was infiltrating their apartments, Counsel for Gressen Properties (Counsel) sent a notice to Appellant and Mother regarding their violation of the building rules and reiterating the new rule (June 21, 2019 Notice).[9] *See* O.R.

---

[8] 42 U.S.C. §§ 3601-3631.
[9] The June 21, 2019 Notice reiterated:

This rule goes into effect immediately. Any violation of this rule will be cause for eviction. This letter is also placing you on notice of your prior violation of the oral warning provided at the inception

4

at 302. On June 27, 2019, Counsel sent a letter to Appellant and Mother notifying them that their Lease was terminated due to a violation of the building rules and giving them 10 days to vacate the premises. *See* O.R. at 305. On or about July 16, 2019, Appellant filed a complaint with the PCHR alleging disability discrimination. *See* O.R. at 522-525. On August 27, 2019, Counsel sent another letter to Appellant and Mother notifying them that their Lease would not be renewed and instructing them to vacate the premises.

On September 9, 2019, Appellant filed a complaint with the Fair Housing Commission (FHC). On December 3, 2019, after holding a hearing, the FHC determined that the August 27, 2019 lease nonrenewal notice was not retaliatory "as there were issues between the parties that preceded [the] letter from [landlord] to [t]enant[,]" and that the PCHR will address Appellant's claim that the no smoking policy is discriminatory and should be waived as an accommodation. O.R. at 322. On December 5, 2019, Counsel sent a letter to Appellant and Mother again notifying them that their Lease will not be renewed and instructing them to "vacate on or before January 31, 2020." O.R. at 496. On or about January 17, 2020, Appellant filed another complaint with the PCHR alleging disability discrimination and retaliation. *See* O.R. at 526-528. Appellant vacated the premises on February 1, 2021, after his Lease term expired.

On May 14, 2021, the PCHR held a hearing. On October 21, 2021, the PCHR determined that Appellant failed to establish a claim of disability discrimination/failure to accommodate a disability under Section 9-1108 of the

of your [L]ease. No further warnings shall issue in this regard. Continued violation of this rule will be cause for eviction.

O.R. at 302.

Philadelphia Fair Practice Ordinance (PFPO);[10] and that Gressen Properties violated the PFPO by retaliating against Appellant for engaging in protected activities on two occasions.[11] The PCHR directed Gressen Properties to: (1) pay a $2,000.00 penalty for each retaliatory action; (2) reimburse Appellant for reasonable attorney's fees and costs; and (3) cease and desist engaging in retaliatory actions.

On October 27, 2021, Gressen Properties appealed to the trial court. On March 17, 2023, the trial court reversed the contested portion of the PCHR's decision. On April 10, 2023, Appellant appealed to this Court.[12] On May 1, 2023, the trial court directed Appellant to file a Statement of Errors Complained of on

---

[10] Philadelphia, PA, Code, §§ 9-1101–9-1133 (12th ed. 2020). The PFPO is not included in the original record but can be found at: https://codelibrary.amlegal.com/codes/philadelphia/latest/philadelphia_pa/0-0-0-278561 (last visited May 8, 2024). The PCHR incorrectly referenced Section 9-1103 of the PFPO, which prohibits unlawful employment practices. *See* Philadelphia, PA, Code, § 9-1103. Section 9-1108 of the PFPO prohibits unlawful housing and real property practices. *See* Philadelphia, PA, Code, § 9-1108.

[11] Specifically, the PCHR determined that the two separate acts of retaliation were: (1) seeking to evict Appellant after Appellant filed claims with the PCHR and the FHC; and (2) seeking to evict Mother. *See* O.R. at 533.

[12]

> This Court has consistently held that our scope of review is limited to a determination of whether the [PCHR's] adjudication is in accordance with law, constitutional rights have been violated or the findings of the [PCHR] are not supported by substantial evidence. *Civil Serv*[.] *Comm*['n] *of Phila*[.] *v. Banks*, . . . 442 A.2d 41 ([Pa. Cmwlth.] 1982). "Substantial evidence must be something more than a scintilla creating a mere suspicion of the existence of a fact, and must be such relevant evidence as a reasonable mind might consider adequate to support a conclusion." *Barnes v. Dep*['t] *of Just*[.] . . . , 452 A.2d 593, 595 ([Pa. Cmwlth.] 1982).

*City of Phila. Comm'n on Hum. Rels. v. Trs. of Univ. of Pa.*, 496 A.2d 435, 436 (Pa. Cmwlth. 1985).

Appeal pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1925(b) (Rule 1925(b) Statement). On May 19, 2023, Appellant filed his Rule 1925(b) Statement. On August 1, 2023, the trial court filed a Notice of No Supplemental Opinion pursuant to Rule 1925(a).

Appellant argues that the trial court reweighed the evidence and the credibility determinations, and substituted its judgment for that of the PCHR. Specifically, Appellant contends that the trial court reassessed the facts, and then arrived at the conclusion it would have had it been sitting as the fact-finder. Gressen Properties rejoins that the trial court did not substitute its own judgment for the PCHR's judgment on the weight, credibility, and relevance of the evidence, but rather it determined that the evidence could not support the PCHR's findings, and that there was no explanation regarding why the award was entered against an incorrect party.

The PCHR concluded, in relevant part:

8. [Appellant] did not present sufficient evidence to establish a failure to accommodate claim under the PFPO. While [Appellant] is unequivocally a qualified individual with a disability, he did not present sufficient evidence to show that [Gressen Properties'] building policies precluded him from being able to take his prescribed medication.

9. [Appellant] did establish a retaliation claim under [the] PFPO. In fact, [Appellant] established that [Gressen Properties] engaged in two separate acts of retaliation: (1) seeking to evict [Appellant] after [Appellant] filed claims with the PCHR and FHC[;] and (2) seeking to evict [Mother]. Clearly, [**Appellant**] **engaged in the protected activity of filing complaints against [Gressen Properties] and [Gressen Properties] took adverse action against both [Appellant] and [Mother]**.

7

O.R. at 532-533 (emphasis added).

Section 9-1108(1)(g) of the PFPO provides that it shall be unlawful

> [**f**]**or any person to** harass, threaten, harm, damage or otherwise penalize, **retaliate** or discriminate **in any manner against any person because he**, she or it has complied with the provisions of this Chapter, exercised his, her or its rights under this Chapter, enjoyed the benefits of this Chapter, or **made a charge**, testified or assisted in any manner in any investigation, proceeding or hearing **hereunder**.

Philadelphia, PA, Code, § 9-1108(1)(g) (emphasis added). "PFPO claims are generally evaluated under the same legal framework as Title VII claims." *Darby v. Temple Univ.*, 216 F. Supp. 3d 535, 543 (E.D. Pa. 2016). "[R]etaliation claims are subject to the *McDonnell Douglas* burden-shifting analysis. *See Moore v. City of Phila.*, 461 F.3d 331, 342 (3d Cir. 2006) (applying the *McDonnell Douglas* [*Corp. v. Green*, 411 U.S. 792 (1973)], framework to a Title VII retaliation claim)[.]" *Griswold v. Drexel Univ.*, ___ F.3d ___, ___ (E.D. Pa., No. 22-0568, filed March 1, 2024), slip. op. at 3.

Under the Pennsylvania Human Relations Act,[13]

> [a] *prima facie* case of retaliation requires [Appellant] to show that (i) []he was engaged in a protected activity; (ii) [Gressen Properties] was aware of the protected activity; (iii) subsequent to participation in the protected activity [Appellant] was subjected to an adverse [] action; and (iv) there is a causal connection between participation in the protected activity and the adverse [] action. *Robert Wholey Co*[.]*, Inc. v. [Pa.] Hum*[.] [*Rels.*] *Comm*[*'n*], . . . 606 A.2d 982, 983 ([Pa.] 1992). Upon showing a *prima facie* case, the burden shifts to [Gressen Properties] to articulate a legitimate, non-discriminatory reason for its

---

[13] Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §§ 951-963.

action.  *See McDonnell Douglas*.  Finally, the burden shifts to [Appellant] to show that [Gressen Properties'] proffered reasons are pretextual.  *Id*.

*Spanish Council of York, Inc. v. Pa. Hum. Rels. Comm'n*, 879 A.2d 391, 399 (Pa. Cmwlth. 2005).

*Jackson v. Pa. Hum. Rels. Comm'n*, 308 A.3d 900, 907 (Pa. Cmwlth. 2024).

Here, the PCHR determined that Gressen Properties engaged in retaliation based on nothing more than the fact that Appellant filed complaints with the FHC and the PCHR, and sometime thereafter, Gressen Properties sent a second notice of non-renewal/notice to quit to Appellant and Mother.  *See* O.R. at 531 (Findings of Fact 13-15).

However, Mother was not a party to the complaint before the PCHR, thus whether Gressen Properties sought to evict Mother is irrelevant to the issue of retaliation.  Further, and most significantly, the PCHR completely ignored the fact that, on June 27, 2019, over two months before Appellant filed his complaints with the FHC and the PCHR, Counsel sent a letter to Appellant and Mother notifying them that their Lease was terminated due to a violation of the building rules and giving them 10 days to vacate the premises.  *See* O.R. at 305.  Thus, there is no causal connection between participation in the protected activity and the adverse action.  Moreover, the record is replete with evidence establishing that Gressen Properties had a legitimate, non-discriminatory reason for its action, i.e., Appellant's violation of the no smoking policy.

Here, the trial court correctly stated its standard of review.  Specifically, the trial court described:

Under Pennsylvania law, the trial court's review of a local agency's determinations is analogous to that of an

9

appellate court of a trial court's legal ruling. Due deference is accorded to [the] agency's fact-finding determinations. Review is limited to determining whether the [agency] had committed an error of law or a manifest abuse of discretion. *Allegheny W. C*[*ivic*] *Council Inc. v. Zoning* [*Bd.*] *of Adjustment*, 689 A.2d 225, 227 (Pa. 1997). 2 Pa.C.S. § 752. When, as in the instant case, no further evidence is introduced before the trial court, "review is limited to determining whether the [reviewing] [agency] committed an abuse of discretion or an error of law in rendering its decision. [The appellate court] may conclude that the [agency] abused its discretion only if its findings are not supported by substantial evidence, which [courts] have defined as 'relevant evidence which a reasonable mind would accept as adequate to support the conclusion reached." *Marshall v. City of Phila*[.], 97 A.3d 323, 331 (Pa. 2014).

Both Pennsylvania [c]ommon [l]aw and [r]ules of [a]dministrative [l]aw allow the trial court to overturn an agency decision, only after "determining whether there was a constitutional violation, an error of law, a failure by [the] local agency to comply with the statutes procedural provisions, or a material finding of fact that is unsupported by substantial evidence." *Johnson v. Lansdale Borough*, . . . 146 A.3d 711 ([Pa.] 2016)[;] 42 Pa.C.S. § 704. If the trial court does not affirm the agency decision, the trial court may enter any order authorized by . . . [Section] 706 [of the Judicial Code, which] authorizes the trial court to "affirm, modify, vacate, set aside, or reverse any order brought before it for review and may remand the matter and direct the entry of such appropriate order. . . ." 42 Pa.C.S.[] § 706.

Trial Ct. Op. at 5-6.

Using this standard, the trial court determined, in relevant part: "[T]he PCHR's fundamentally erroneous findings effectively undermined the resulting decision. **Substantial evidence did not support** [**its**] **determinations**. . . . Thus,

10

reversal of the PCHR's [o]rder of October 21, 2021[,] is due." *Id.* at 7 (emphasis added). This Court discerns no error in the trial court's determination.[14]

For all of the above reasons, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

---

[14] Given this Court's determination, the issue of whether the PCHR entered its award against an incorrect party is moot.

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Appeal of Gressen Properties,    :
LLC    :
   :
From Decision of City of Philadelphia    :
Commission on Human Relations    :
   :    No. 349 C.D. 2023
Appeal of: Christopher Leidig    :

## O R D E R

AND NOW, this 9th day of May, 2024, the Philadelphia County Common Pleas Court's March 17, 2023 order is affirmed.

_____
ANNE E. COVEY, Judge